IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VANESSA L. SULLIVAN,          *
                              *
     Plaintiff,               *      CIVIL ACTION NO. 14-00009-B
                              *
vs.                           *
                              *
CAROLYN W. COLVIN,            *
Commissioner of Social Security,*
                              *
     Defendant.               *

<u>ORDER</u>

Plaintiff Vanessa L. Sullivan (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*   On October 22, 2014, the parties waived oral argument and consented to have the undersigned conduct any and all proceedings in this case. (Docs. 17, 18).   Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.   Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.  <u>Procedural History</u>

Plaintiff filed an application for supplemental security income on June 16, 2010.[1] (Tr. 167). Plaintiff alleged that she has been disabled since May 20, 2001, due to "seizures and arthritis." (<u>Id.</u> at 167, 172). Plaintiff's application was denied, and upon timely request, she was granted an administrative hearing before Administrative Law Judge Thomas M. Muth II (hereinafter "ALJ") on November 17, 2011. (<u>Id.</u> at 51). Plaintiff attended the hearing with her counsel and her daughter, and Plaintiff and her daughter provided testimony related to her claims. (<u>Id.</u> at 51, 55, 68). A vocational expert ("VE") also appeared at the hearing and provided testimony. (<u>Id.</u> at 72). On February 10, 2012, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (<u>Id.</u> at 46). The Appeals Council denied Plaintiff's request for review on November 15, 2013. (<u>Id.</u> at 1). Thus, the ALJ's decision dated February 10, 2012 became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties agree that this case is now ripe for judicial review and is

---

[1] Plaintiff filed a prior application on November 27, 2001, and was awarded disability benefits on July 25, 2002, as a result of the severe impairments of a seizure disorder and osteoarthritis. (Tr. 89-93).

properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   Issues on Appeal

> **A.   Whether the ALJ erred in evaluating the opinions of consultative examiners, Dr. Keith Varden, M.D., and Dr. Kenneth Starkey, Psy.D.?**
>
> **B.   Whether the ALJ erred in evaluating the testimony of Plaintiff's daughter regarding the frequency of Plaintiff's seizures?**

## III. Factual Background

Plaintiff was born on December 31, 1958, and was fifty-two years of age at the time of her administrative hearing on November 17, 2011. (Tr. 51, 167). Plaintiff testified that she completed the twelfth grade in high school. (Id. at 55). The record also shows that Plaintiff attended Bishop State Community College from 1991 to 1992 and from 1994 to 1995 and earned her Early Childhood Education Certificate.[2] (Tr. 223).

Plaintiff's Work History Report shows that she last worked in the day care industry from 1995 to 2002 as a teacher. (Id. at 55, 179). Plaintiff also served as a "Program Director" for a daycare from 1995 to 1997. (Id. at 179). Plaintiff testified that she stopped working in 2002 because she began having

---

[2] In her Disability Report, Plaintiff stated that she had not completed any type of specialized job training, trade, or vocational school. (Tr. 173).

seizures on the job. (Id. at 56). She stated that she has consistently had seizures at a rate of three or four a month since 2002, which makes her unable to work. (Id. at 56-57).

Plaintiff testified that she lives in a house with her seventy-six year old mother and that her daughter and her sister come over and do the housework, cooking, and grocery shopping. (Id. at 59). Plaintiff stated that she has a driver's license, but she does not drive. (Id. at 59-60). According to Plaintiff, she gets up in the morning, gets dressed, watches television, reads, goes outside for a few minutes to get fresh air, and visits with friends who come over. (Id. at 60). She attends church two Sundays out of the month. (Id. at 65).

Plaintiff reported that she can only stand for ten to fifteen minutes, but she can walk for twenty minutes. (Id. at 57-58). She also reported that she can sit for about ten minutes, and is able to lift five pounds. (Id. at 58, 67).

Plaintiff testified that she had surgery on her right shoulder in 2008 and still has pain which she rated as an eight on a ten-point pain scale. (Id. at 60-61). She also began having arthritis pain in her left hand in October 2011, for which she received a cortisone injection, which greatly improved her condition. (Id. at 61-62).

Plaintiff's medications include Norvasc and Hydrochlorothiazide (for high blood pressure), Trileptal (for

seizures), Celebrex (for arthritis), Nexium (for acid reflux), Darvocet (for pain) and Zoloft (for depression). (Id. at 57, 63-64, 175). Plaintiff reported that the side effects from her medications include dizziness, drowsiness, nausea, headaches, confusion, double vision, and hostility. (Id. at 67, 197).

## IV. **Analysis**

### A. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

B.  **Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[4] 20 C.F.R.

_____

[4] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 16, 2010, the alleged onset date, and that she has the severe impairment of depressive disorder, mathematics learning disorder, seizure disorder, impingement of the right shoulder status post arthroscopic surgery, venous insufficiency, plantar fasciitis, obesity, and radial styloiditis. (Tr. 38). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform light work,

---

work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

with the following exceptions: "The [Plaintiff] can lift and/or carry ten pounds occasionally and items of negligible weight frequently. She can stand and/or walk for six hours and sit for six hours. She can occasionally perform pushing and/or pulling with the right upper extremity, perform frequent pushing and/or pulling with the left upper extremity, and perform frequent pushing and/or pulling with the lower extremities bilaterally. The [Plaintiff] can perform frequent balancing, frequent stooping, occasional kneeling, occasional crouching, no crawling, and occasional climbing of ramps and stairs. The [Plaintiff] can perform no climbing of ladders, ropes and scaffolds. The [Plaintiff] can perform no overhead reaching with the right arm. The [Plaintiff] can perform frequent reaching in other directions with the right arm. The [Plaintiff] has unlimited reaching with the left arm. The [Plaintiff] can perform frequent handling, bilaterally. The [Plaintiff] can perform frequent fingering with the left hand. The [Plaintiff] has unlimited fingering with the right hand. The [Plaintiff] can frequent[ly] perform feeling, bilaterally. The [Plaintiff] can perform work that requires no more than occasional exposure to extreme heat and occasional exposure to extreme cold. She must avoid all exposures to unprotected heights and dangerous machinery. The [Plaintiff] cannot work in close proximity to unprotected bodies of water. The [Plaintiff]

8

could perform no commercial driving.  The [Plaintiff] would have one unplanned absence per month.  The [Plaintiff] could perform [work] involving simple routine tasks and short, simple instructions.  The [Plaintiff] could perform work involving only simple work-related decision[s] with few work place changes. The [Plaintiff] would be able to perform work that involves no more than non-transactional and occasional interaction with the public.  She can sustain concentration and attention for two-hour periods with customary breaks." (Id. at 40).  The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent described.  (Id. at 43).

Given Plaintiff's RFC, the ALJ found that Plaintiff is unable to perform any past relevant work.  (Id. at 44). However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of light work, as well as her age, education and work experience, there are also other jobs existing in the national economy that Plaintiff is able to perform, such as "food preparation worker" (light and unskilled), "storage facility clerk" (light and unskilled), and "order clerk" (sedentary and unskilled).  (Id. at 45).  Thus, the ALJ concluded that

Plaintiff is not disabled.  (Id. at 46).

In assessing the Plaintiff's RFC, the ALJ also made the following relevant findings:

> In a Disability Report, the claimant states she is disabled from arthritis and seizures. The claimant indicates she stands five feet eight inches and weighs two-hundred twenty pounds.  The claimant indicates she stopped working on May 1, 2001, because of other reasons.  She kept having seizures on the job; therefore, she quit working on May 1, 2001.  She indicates that she completed the twelfth grade.  The claimant states she has not completed any type of specialized job training, trade, or vocational school.  The claimant state[s] she worked as a childcare worker at a day care from 1995 to 2001.  The claimant indicates that she lifted and carried children that weigh between twenty-five pounds and fifty pounds (Exhibit B4E). On July 27, 2010, the claimant in a Questionnaire for Description of Seizures and treatment for seizures notes she has been having seizures since 2001.  When asked to give the date of the last three seizures, the claimant named 2010.  The claimant reports that she had twelve seizures or more.  The claimant states that she blacks out; however, she does not experience unconsciousness.  If a seizure is coming on, the claimant state[s] she gets quiet[,] gets headaches, day [d]ream[s] and [makes] noise with [her] mouth.  The claimant states she does not chew the tongue, but she has jerking motion of the arms and legs.  The claimant notes she loses control of her bladder.  After an attack, she notes that she goes to sleep.  After an attack, the claimant states she feels tired for forty-five to sixty minutes. The claimant states she takes Tegretol for seizures. The claimant states she has side effects of dizziness, drowsiness, nausea, headache, confusion, double vision, and hostility.

She gets her medicine refilled every three months.  She sees Dr. Salter for seizures and last saw him in May 2010.  She reports she underwent magnetic resonance imaging and CT in 2009.  The claimant reports she does not drink beer, whiskey or alcohol in any form (Exhibit B7E).

The medical evidence of record for the period at issue, June 16, 2010, the date of the application for supplemental security income, discloses:

With regard to the alleged right shoulder problems and arthritis, the medical evidence shows that in July 2008, the claimant underwent arthroscopy of her right shoulder, arthroscopic acromioplasty, and distal clavicle excision.  J. Michael Cockrell, M.D., performed the arthroscopic procedures.  On July 18, 2008, Dr. Cockrell notes the claimant still has trouble with her right shoulder.  The magnetic resonance imaging reveals AC impingement and tendinitis.  At that point, the claimant opted for arthroscopic decompression (Exhibit Bl2F, p. 3-4).  X-rays showed some degenerative changes of osteoarthritis but no significant focal arthritic problem such as thumb CMC arthritis.  Both of these areas were injected with Celestone-1-ml (Id., p. 1).  On October 11, 2011, Dr. Ben Freeman diagnosed the claimant with radial styloiditis vs. Dequervain's tenosynovitis (Id., p. 1).

With regards to the alleged seizures, the medical evidence shows that on September 15, 2010, Keith Varden, M.D., reports that the claimant is a fifty-one year-old female who presents with complaint seizures.  Dr. Varden indicates she has osteoarthritis of her legs and all over and she has been off work from teaching since 2001.  The claimant told Dr. Varden that her last seizure was two weeks ago.  Dr. Varden notes the claimant moves all extremities and has

muscle strength of 5/5, equal bilaterally.
Dr. Varden notes the claimant squats to
about fifteen degrees.  Her gait is slow,
but it is within normal range.  Vision is
20/25.  Dr. Varden diagnosed the claimant
with seizure disorder.  He noted that these
are not well controlled despite being on
anti-epileptics, having had seizures within
the last two or three weeks.  He reports the
seizure disorder would put her at increased
risk for work-related activities currently.
Dr. Varden opines that until these can be
better controlled, he would consider her
disabled from normal work-related
activities, sitting, standing, walking,
carrying objects, traveling, and driving,
which would most likely impair her abilities
or put her at risk for most work-related
activities (Exhibit B7F).

With regards to venous insufficiency, I find
that Victor[y] Health Center records show
that on September 10, 2010, the claimant was
examined for right leg swelling of one year
with pain in the right heel.  Dr. Lightfoot
diagnosed the claimant with hypertension,
venous insufficiency, and plantar fasciitis
(Exhibit B6F, p. 2).  On December 20, 2010,
the claimant was examined for earaches.
Notes disclose the claimant has swelling of
the feet - venous insufficiency better when
she wears hose (Exhibit 8F, pp. 3-5).  On
January 21,2011, the claimant received a
well check (Id., p. 1).  Records from
Victory Health Center, on April 28, 2011,
show claimant was seen for medication
refills.  [She] ran out of Norvasc-10-mg for
hypertension along with Zoloft.  Notes
disclose a co-morbid disease of seizure
disorder with no seizure activity while on
Trileptal.  The claimant was diagnosed with
hypertension, not at goal, seizure disorder
controlled, and obesity.  Lab records show
total cholesterol was high at 294 on May 5,
2011 (Id., p. 3).  On September 27, 2011,
notes disclosed the claimant was seen with
pain in her left shoulder and wrist.  Dr.

Lightfoot diagnosed the claimant with C4-hand and wrist tenosynovitis, hypertension under poor control and compliance, depression, and seizures.

There is (sic) treatment evidence does not support an inference that the claimant would have more than one seizure per month that would interfere with work (Exhibits B6F, Exhibit B8F, Exhibit B10F and Exhibit B13F). The residual functional capacity includes seizure precautions.

With regards to a depressive disorder and mathematics learning disorder, the medical evidence shows that on September 1, 2010, Kenneth R. Starkey, Psy.D, examined the claimant. Dr. Starkey notes that symptoms of depression appeared in partial remission, at the time of the meeting. Treatment for her reported problems with seizures and depression has been limited to pharmacotherapy. She has never received outpatient counseling for problems with depression. With regards to work-related activities, Dr. Starkey notes the claimant reports prevailing seizures make it difficult to perform work duties. Dr. Starkey notes that her mother raised the claimant and her father died when she was eleven years old. Dr. Starkey indicates the claimant completed the twelfth grade in school. Dr. Starkey reports the claimant is presently unemployed, and she last worked full time as a teacher for the Open Door Day Care for six months until 2001. Dr. Starkey notes her husband and grandchildren accompanied the claimant. She was able to focus and sustain attention, but with mild and intermittent distraction from extraneous stimuli. She struggled to complete the serial three's task without error, but accurately spelled WORLD backwards. She states three plus four equal seven, but she was unable to compute $1.00 minus >.17 (seemingly due to computation difficulties). Dr. Starkey reports there

13

was evidence of flight of ideas, tangential thinking, or loosening of associations. Intellectual function was estimated to be in the low average to borderline range.  Dr. Starkey opines that her ability to focus and sustain attention and for immediate memory appear limited.  She reports both trials of only four digits verbally presented in random fashion, and both trials of only three digits randomly presented in reverse order. She accurately  recalled only three of  three  objects  verbally  presented following a ten-minute delay.  With regards to  remote  memory,  the  claimant  reports employment  and  school  dates  with  mild difficulty.  Her fund of knowledge appears somewhat limited.  She incorrectly reports the number of weeks in a year to be two-hundred  and sixty-five.  Dr. Starkey opined that  her  insight  and  judgment  appeared limited.  Dr. Starkey diagnosed the claimant with Depressive Disorder-partial  remission, mathematics  disorder, and a current global assessment  of  sixty-five.    Dr.  Starkey opines that the claimant's progress appears guarded    to    fair    (from    psychological perspective).   Some  additional  improvement of  existing  mild  depressive  symptoms  might occur  over  the  next  six  months  with  more formal  psychiatric  care  and  the  addition  of weekly counseling.   Dr. Starkey opined that the   claimant's   ability   to   understand, remember, and carry out simple and concrete instructions  appear  adequate.   Her  ability to  work  independently  (vs.  with  Close Supervision)  also  appear  adequate  now.   Her ability  to  work  with  supervisors,  co-workers and  public  appears  adequate.   Her ability  to work  with  pressures  common  to  most  every  day work  settings  is  marginal  (Exhibit B3F).   On September  2,  2010,  Ellen  N.  Eno,  Ph.D.,  in  a Psychiatric  Review  Technique,  opined  that the  claimant  reports  difficulty  with  sleep; she  is  able  to  take  care  of  her  personal needs  with  few  modifications  for  mild restriction  of  activities  of  daily  living. Dr.  Eno  notes  that  claimant  often  visits

others by phone and in person for a mild
functional limitation in difficulties
maintaining social interaction. Dr. Eno
notes the claimant occasionally forgets to
take prescribed medications and shops for
two-hour intervals, and is able to drive
when allowed due to her seizures. Dr. Eno
notes that her attention span varies and she
does not usually complete tasks that she
starts, which are the source of a moderate
difficulties in maintaining concentration,
persistence, or pace. Dr. Eno notes that
the claimant does not handle stress well,
but she is able to accept changes and she
reports depression and cries a lot (Exhibit
B4F, p. 11). By moderate, Dr. Eno means
that the claimant has the ability to
understand, remember, and carry out very
short and simple instructions, as she could
attend for two-hour intervals (Exhibit B5F,
p. 3).

...

Dr. Varden diagnosed the claimant with
seizure disorder, not well controlled
despite being on medication, having had
seizures with[in] the last two or three
weeks. He also stated these seizures would
put the claimant at increased risk for work-
related activities currently. Dr. Varden
opines that until these are better
controlled, he would consider her disabled
from normal work-related activities. This
opinion concerning the claimant's capacity
to work is not consistent with other medical
evidence of record regarding the lack of a
psychologically medically determinable
impairment and is inconsistent with the
other medical evidence of record.

As for the opinion evidence, the residual
functional capacity in Exhibit B5F and PRTF
in Exhibit B4F [both completed by Dr. Eno]
are generally consistent with the other
credible medical evidence of record and
thus, merits significant weight. The

opinions in Exhibit B3F [completed by Dr. Starkey] are consistent with the other credible medical evidence and, thus, merit significant weight. The opinion in Exhibit 7F [completed by Dr. Varden] consultative examination opinion concerning the claimant's capacity to work is not consistent with other medical evidence of record and thus, merits substantial but not significant weight. The Consultative examination report is not consistent with the other medical evidence of record regarding the lack of a psychological medically determinable impairment. Thus, it merits no substantial weight.

In sum, the above residual functional capacity assessment is supported by Dr. Ellen Eno in Exhibit B4F and B5F, as they are consistent with the other credible medical evidence, and, thus, merit significant weight. The opinion in Exhibit B7F by K. Keith Varden, M.D., consultative examination opinion concerning the claimant's capacity to work is not consistent with the other medical evidence of record and, thus, merits substantial but not significant weight. The consultative examination report is not consistent with the other medical evidence of record regarding the lack of a psychological medically determinable impairment. Thus, it merits no substantial weight.

(Id. at 41-44). The Court now considers the foregoing in light of the record in this case and the issue on appeal.

    **1.   Issue**

       **A. Whether the ALJ erred in evaluating the opinions of consultative examiners, Dr. Keith Varden, M.D., and Dr. Kenneth Starkey, Psy.D.?**

Plaintiff argues that the ALJ erred in rejecting the

opinions of consultative examiners, Dr. Keith Varden, M.D., and Dr. Kenneth Starkey, Psy.D, regarding the severity of her seizure disorder, and adopting the opinion of State Agency reviewing psychologist, Dr. Ellen Eno, Ph.D. (Doc. 14 at 2). The Commissioner counters that the ALJ properly weighed all of the medical opinions at issue, considering their consistency, or lack thereof, with the medical evidence of record, and that the ALJ's RFC determination is supported by substantial medical evidence in the record. (Doc. 15 at 2-6). Having reviewed the record at length, the Court agrees that Plaintiff's claims are without merit.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the Plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's

decision is not supported by substantial evidence.  See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985).  Plaintiff has failed to meet her burden in this case.

As previously stated, the ALJ concluded that, although Plaintiff has the severe impairments of seizure disorder, depressive disorder, mathematics learning disorder, impingement of the right shoulder status post arthroscopic surgery, venous insufficiency, plantar fasciitis, obesity, and radial styloiditis, she is not disabled.  (Tr. 38).  In making this determination, the ALJ relied upon Plaintiff's medical records from her treating physicians, the report of consultative psychological examiner Dr. Kenneth Starkey, Psy.D., the report of State Agency reviewing psychologist Dr. Ellen Eno, Ph.D., and the Plaintiff's testimony.  (Id. at 41-44).  As the ALJ found, this evidence confirms that Plaintiff's medical conditions, while significant, are not disabling in nature.[5]

To support her claim on appeal that her seizure disorder and depression are disabling, Plaintiff argues that the ALJ erred in giving greater weight to the opinions of State Agency reviewer, Dr. Ellen Eno, Ph.D.,[6] than those of consultative

---

[5] On appeal, Plaintiff focuses only on her seizure disorder and depression.  (Doc. 14 at 4).

[6] On September 2, 2010, Dr. Eno completed a Psychiatric Review Technique finding that Plaintiff suffered from depressive disorder resulting in no more than "mild" limitations in

18

physical examiner Dr. Keith Varden, M.D., and consultative psychological examiner Dr. Kenneth Starkey, Psy.D. However, the record shows that the ALJ actually afforded the same weight, *i.e.*, "significant weight," to the opinions of Dr. Starkey and Dr. Eno, and he afforded "substantial" weight to Dr. Varden's opinions. (Id. at 43-44).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an important part of steps four and five of the disability determination process. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc.

---

activities of daily living and social functioning, "moderate" limitations in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. 262, 269). Dr. Eno also completed a Mental RFC assessment, finding "moderate" limitations in three functional categories, and no significant limitations in the remaining seventeen functional categories. (Id. at 273). Dr. Eno opined that Plaintiff has the ability to understand, remember, and carry out very short and simple instructions and that she can attend for two hour intervals. (Id. at 275).

Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). The opinion of "a one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician, Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160), and an ALJ must have good cause to credit an examining consulting physician's opinion over that of a treating physician. See Adamo v. Commissioner of Soc. Sec., 365 F. Appx. 209, 213 (11th Cir. 2010). Furthermore, absent good cause, the opinion of a non-examining physician is entitled to little weight if it is contrary to either the treating or examining physician's findings. See Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Broughton v. Heckler, 776 F.2d at 962.

The foregoing notwithstanding, good cause exists to discredit the testimony of any medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012).

The ALJ is "free to reject the opinion of any physician [treating, examining, or non-examining] when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo, 365 Fed. Appx. at 212 (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

Turning now to the opinions of Dr. Kenneth Starkey, Psy.D., who performed a mental examination and evaluation of Plaintiff at the request of the Agency on September 1, 2010, his report shows that Plaintiff reported "having problems with seizures 'off and on for about 12 years,'" her last seizure having occurred "last month," which would have been in August 2010.[7] (Id. at 255-56). Plaintiff also reported that she had a two-year history of problems with depression; however, she acknowledged that she was able to feed, bathe, groom, and dress herself without assistance, prepare meals, manage money, shop for groceries, and drive without assistance.[8]   (Id. at 256).

---

[7] Notably, the record reflects that on September 10, 2010, only nine days after Plaintiff's consultative examination by Dr. Starkey, she was treated by her regular treating physician, Dr. Robert Lightfoot, M.D., and his treatment notes do not reflect that Plaintiff reported any recent seizure activity.  (Tr. 277).

[8] Plaintiff reported that, other than seizures and depression, she had no other physical or psychological condition that would prevent her from working.  (Tr. 256).  She further stated that her treatment for both conditions had been limited to medication.  (Id.).

Dr. Starkey diagnosed Plaintiff with "depressive disorder" in "partial remission," and "mathematics disorder," finding that her mental abilities were largely "adequate" and her limitations were largely "mild." (Id. at 257-58). Dr. Starkey also noted that Plaintiff's insight and judgment were "limited," and that her focus, immediate memory, and fund of knowledge were "somewhat limited." (Id.). He concluded that Plaintiff's prognosis was "guarded to fair," that her ability to understand, remember, and carry out simple/concrete instructions was "adequate," and that her ability to work independently, with supervisors, with co-workers, and with the public was "adequate." (Id. at 258). He also assigned her a GAF score of 65.[9] Notwithstanding these findings, Dr. Starkey also opined that Plaintiff's ability to work with the pressures common to most every day work settings "appears marginal." (Id.).

Plaintiff argues that the phrase, "appears marginal," reflects Dr. Starkey's opinion that her limitations are so severe that they prevent her from working. It is clear that

---

[9] According to the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), Fourth Edition, the GAF scale is used to report an individual's overall level of functioning. A rating of 61-70 on the GAF scale indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, with some meaningful interpersonal relationships. See generally Jackson v. Astrue, 2011 U.S. Dist. LEXIS 148347, *8, 2011 WL 6780744, *3 (S.D. Ala. Dec. 27, 2011).

while the ALJ assigned significant weight to opinions expressed by Dr. Starkey in his written evaluation, the ALJ implicitly rejected Dr. Starkey's lone statement regarding Plaintiff's ability to deal with work place pressures because it stands in stark contrast to Dr. Starkey's examination findings (as detailed above), including his opinion that Plaintiff's ability to work independently, with supervisors, with co-workers, and with the public was "adequate." The statement regarding work pressure also conflicts with the fact that Dr. Starkey assigned Plaintiff a GAF score of 65, denoting only "mild" symptoms, as well as with the other substantial evidence in the record. Accordingly, the ALJ had good cause for disregarding this isolated and inconsistent statement contained in Dr. Starkey's written evaluation, and Plaintiff's argument that the ALJ erred in rejecting the opinion is without merit.

Next, with respect to the opinions of Dr. Keith Varden, M.D., who performed a consultative physical examination of Plaintiff at the request of the Agency on September 15, 2010, his report shows that Plaintiff reported having recently had seizures "within the last two or three weeks."[10]  (Id. at 280). Dr. Varden's examination findings revealed that Plaintiff was in

---

[10] As noted in the discussion of Dr. Starkey's evaluation, Dr. Lightfoot's notes from Plaintiff's September 10, 2010 visit do not reflect that she mentioned any recent seizure activity during that visit.  (Tr. 277).

"no acute distress;" she was alert, oriented, without focal deficits; her reflexes were symmetrical; her fine dexterity motor skills were intact; and, in essentially every respect, her physical examination was completely normal. (Id.). Notwithstanding these findings, Dr. Varden opined, based *solely* on Plaintiff's reports of recent seizure activity, that: "[a]pparently [Plaintiff's seizures] are not well controlled despite being on antiepileptics, having had seizures within the last two or three weeks." (Id. at 280). "[Her seizure disorder] [w]ould put her at increased risk for work-related activities currently." (Id.). "Until these can be better controlled, I would consider [her] disabled from normal work-related activities, [such as] sitting, standing, walking, carrying objects, traveling, driving, etc., which would most likely impair her abilities or put her at risk for most work-related activities." (Id.).

As the ALJ found, Dr. Varden's opinions are not only inconsistent with the medical evidence in this case, they are inconsistent with his own examination findings, which were completely "normal."[11] (Id. at 280). Indeed, after examining Plaintiff on one occasion and finding essentially no physical

---

[11] As stated, the ALJ gave the bulk of Dr. Varden's findings "substantial" weight; however, the ALJ discounted the opinions that were inconsistent with the medical evidence and Dr. Varden's own examination findings. (Tr. 43-44, 280).

problems whatsoever, Dr. Varden opined that her seizures "apparently" were not well controlled, despite being on medication, and thus, until they could be better controlled, he would consider her disabled. Notably, as previously stated, Plaintiff saw her treating physician, Dr. Lightfoot, on September 10, 2010, five days before her consultative examination by Dr. Varden, and yet Dr. Lightfoot's treatment notes do not reflect that Plaintiff mentioned any recent seizure activity. (Id. at 277, 280). Given the inconsistencies between Dr. Varden's opinions and Plaintiff's contemporaneous treatment records, as well as the inconsistences with Dr. Varden's own findings, the ALJ had good cause to discredit this opinion.

In addition to the foregoing evidence, the record shows, as the ALJ found, that Plaintiff claims that she began having seizures in 2001 and has had them unceasingly at a rate of three or four a month from 2002 to 2011. (Id. at 56-57, 196). Plaintiff's medical records show that her treating physician from 2004 to 2008 was Dr. David Harding, M.D., who treated her for various ailments, including back strain, vomiting, chest pain, ulcers, migraines, sinus infections, depression, stress, and anxiety. (Id. at 228-41). Contrary to Plaintiff's claims, however, Dr. Harding's treatment records are devoid of any mention of Plaintiff ever having a seizure during that four-year period. (Id. at 56-57, 228-41). Similarly, with respect to

Plaintiff's depression, Dr. Harding's treatment notes in August 2004 reflect that Plaintiff's depression was "much better" after starting on Lexapro.  (Id. at 239).  This evidence belies Plaintiff's claims that her seizure disorder and depression were disabling in nature.

In addition, the record contains the report of consultative psychological examiner, Dr. Linda Lindman, Ph.D., who performed a psychological examination and evaluation of Plaintiff on July 3, 2008, at the request of the Agency.  (Id. at 301).  Plaintiff reported to Dr. Lindman that she had a history of seizures and that she had been prescribed Tegretol.  (Id. at 302).  However, Plaintiff told Dr. Lindman that she "quit taking the medication about one year ago and no longer has seizures."  (Id.). Similarly, with regard to Plaintiff's depression, Dr. Lindman's examination findings were essentially "normal," with the exception that Plaintiff's "fund of information" was poor.  (Id. at 303).  Dr. Lindman found that Plaintiff's mood and affect were "good" and "appropriate."  (Id.).  Plaintiff further acknowledged that, while she was worried about her husband's health, she was "not overwhelmed by depression and anxiety;" she was sleeping well; and her appetite was good. (Id. at 302-03). This evidence further undermines Plaintiff's claims of debilitating seizure and depression disorders.

The record also shows that, from August 2009 to September 2011, Plaintiff sought regular treatment from Dr. Lightfoot at Victory Health Center for a variety of ailments, including seizures.[12]  On August 31, 2009, Plaintiff reported having had a seizure.  (Id. at 247).  However, when she returned on October 9, 2009, her examination findings were normal, and it was noted that she was "improved" and "doing well."  (Id. at 248).  For more than a year, from December 2009 to January 2011, Plaintiff's examination findings were essentially normal, and, while her seizure diagnosis was noted, the notes do not reflect that she reported any more seizure activity.  (Id. at 249-54, 277-78, 282-85).  To the contrary, when Plaintiff returned for medication refills on April 28, 2011, she reported that she was having "no seizure activity on Trileptal."  (Id. at 297).  Her treatment records on that date reflect "seizure disorder – controlled."  (Id. at 298).  Months later, on September 27, 2011, when Plaintiff presented with complaints of pain in her left wrist, Dr. Lightfoot noted that Plaintiff reported having had a seizure "one mo[nth] ago."  (Id. at 309).  In response, Dr. Lightfoot increased Plaintiff's seizure medication, referred her to an orthopedist for her wrist, and instructed her to

---

[12]  Plaintiff also saw Dr. F.D. Salter, M.D., at Victory Health Center.  (Tr. 251-54, 283).

return in six weeks.   (Id. at 310).   This is Dr. Lightfoot's final treatment note in the record.

Dr. Lightfoot's treatment records (and all of Plaintiff's treatment records at Victory Health Center) reflect that, from August 2009 to September 2011, Plaintiff appears to have reported only two seizures, for which Dr. Lightfoot adopted a conservative treatment plan with medication.  Even assuming that Plaintiff underreported her seizures, she acknowledged in April 2011 that she had experienced "no seizure activity" whatsoever while taking Trileptal.   (Id. at 297).   Plaintiff further acknowledged at her hearing that at no time did Dr. Lightfoot, or any other health care provider, ever recommend that she see a specialist for her seizure disorder, despite the fact that Dr. Lightfoot referred her to other specialists (a podiatrist and an orthopedist) for other ailments.   (Id. at 62-63, 243-54, 293, 310).   This evidence further belies Plaintiff's testimony, and the testimony of her daughter,[13] regarding the frequency and severity of her seizure disorder.

As the ALJ found, Plaintiff's treatment records fail to support her claim that her seizure disorder and/or depression

---

[13] For the reasons discussed herein in relation to Issue Two, the Court rejects Plaintiff's argument that the ALJ erred in failing to credit the testimony of her daughter, Laisha Knight, regarding the frequency of Plaintiff's seizures.   (Doc. 14 at 5).

prevent her from performing a range of light work.  To the contrary, none of Plaintiff's treating physicians has ever indicated that either of these conditions is disabling in nature.  Rather, the treatment records reflect regular, conservative treatment of these medical conditions with medication, and none of her physicians has ever recommended that she see a specialist for either disorder.

Last, as the ALJ articulated, Plaintiff's activities of daily living belie her claim that her seizure disorder and/or her depression is disabling.  As the ALJ indicated, Plaintiff can feed, bathe, groom, dress herself, prepare meals, manage money, shop for groceries, use a phone, and drive.  (Id. at 256).  In her Disability Report, Plaintiff further stated that she cooks for up to five hours at a time, that she cleans daily for up to three hours, that she does laundry once a week, and that she drives and grocery shops for up to two hours at a time.[14]  (Tr. 189-90).

Having reviewed the record at length, the Court finds that the ALJ properly weighed the opinion evidence in this case and that the substantial medical evidence supports the ALJ's finding

---

[14] Plaintiff's testimony at her hearing was very different.  She testified that she lives in a house with her seventy-six-year-old mother and that her daughter and her sister come over and do all of the housework, cooking, and grocery shopping.  (Tr. 59).

that Plaintiff can perform a range of light work.   Therefore,
Plaintiff's claim is without merit.

### B. Whether the ALJ erred in evaluating the testimony of Plaintiff's daughter regarding the frequency of Plaintiff's seizures?

Plaintiff argues that the ALJ erred in failing to properly
evaluate the credibility of her daughter's testimony at the
administrative hearing on November 17, 2011, regarding the
frequency of Plaintiff's seizure activity.   The record shows
that Plaintiff's daughter, Laisha Knight, testified at the
hearing that Plaintiff suffers from seizures "a lot," which she
described as "sometimes two or three times a week."   (Tr. 68-
69).  Ms. Knight further testified that she personally witnessed
Plaintiff having seizures at that rate within the two weeks
preceding the hearing.  (Doc. 14 at 5; Tr. 68-69).

When evaluating a claim based on disabling subjective
symptoms, the ALJ considers medical findings, a claimant's
statements, statements by the treating physician or other
persons, and evidence of how the pain (or other subjective
symptoms) affects the claimant's daily activities and ability to
work.   20 C.F.R. § 416.929(a).   In a case where a claimant
attempts to establish disability through his or her own
testimony concerning pain or other subjective symptoms, a three-
part standard applies.  That standard requires: "(1) evidence of

an underlying medical condition and either (2) objective medical
evidence that confirms the severity of the alleged pain [or
other subjective symptoms] arising from that condition or (3)
that the objectively determined medical condition is of such a
severity that it can be reasonably expected to give rise to the
alleged pain [or other subjective symptoms]." Hubbard v.
Commissioner of Soc. Sec., 348 Fed. Appx. 551, 554 (11th Cir.
2009) (unpublished) (quoting Holt v. Sullivan, 921 F.2d 1221,
1223 (11th Cir. 1991)). The Social Security regulations further
provide:

> [S]tatements about your pain or other
> symptoms will not alone establish that you
> are disabled; there must be medical signs
> and laboratory findings which show that you
> have a medical impairment(s) which could
> reasonably be expected to produce the pain
> or other symptoms alleged and which, when
> considered with all of the other evidence
> (including statements about the intensity
> and persistence of your pain or other
> symptoms which may reasonably be accepted as
> consistent with the medical signs and
> laboratory findings), would lead to a
> conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013).

"A claimant's subjective testimony supported by medical
evidence that satisfies the pain standard is itself sufficient
to support a finding of disability." Foote v. Chater, 67 F.3d
1553, 1561 (11th Cir. 1995). Stated differently, "if a claimant
testifies to disabling pain [or other subjective symptoms] and

satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited." Reliford v. Barnhart, 444 F. Supp. 2d 1182, 1186 (N.D. Ala. 2006). Therefore, once the determination has been made that a claimant has satisfied the three-part standard, the ALJ must then turn to the question of the credibility of the claimant's subjective complaints. See id., 444 F. Supp. 2d at 1189 n.1 (the three-part standard "is designed to be a threshold determination made prior to considering the plaintiff's credibility."). If a claimant does not meet the standard, no credibility determination is required. Id.

In assessing a claimant's credibility, the ALJ must consider all of the claimant's statements about his symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. See 20 C.F.R. § 404.1528. Such credibility determinations are within the province of the ALJ. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). However, if an ALJ decides not to credit a claimant's testimony about his or her subjective symptoms, "the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding." Strickland v. Commissioner of Soc. Sec., 516 Fed. Appx. 829, 832 (11th Cir. 2013) (unpublished) (citing Foote, 67 F.3d at 1562); see also Tieniber v. Heckler, 720 F.2d 1251, 1255

32

(11th Cir. 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).  Failure to articulate the reasons for discrediting testimony related to pain or other subjective symptoms requires, as a matter of law, that the testimony be accepted as true. Holt, 921 F.2d at 1223.

The Eleventh Circuit has held that the determination of whether objective medical impairments could reasonably be expected to produce the pain or other subjective symptoms is a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1985), *vacated on other grounds and reinstated sub nom.*, Hand v. Bowen, 793 F.2d 275 (11th Cir. 1986).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Nye v. Commissioner of Social Sec., 524 Fed. Appx. 538, 543 (11th Cir. 2013) (unpublished).

In the present case, Plaintiff argues that the ALJ erred by failing to comply with Social Security Ruling 96-7p, which required him to consider and evaluate Plaintiff's daughter's testimony regarding the frequency of Plaintiff's seizure

activity.[15]  While Plaintiff is correct that the ALJ did not made

a  specific  credibility  determination  with  respect  to  her

daughter's testimony, an ALJ is not required to make a specific

credibility finding as to a lay witness's testimony if the ALJ's

_____

[15] SSR 96-7p provides, in pertinent part:

> 4.  In  determining  the  credibility  of  the
> individual's  statements,  the  adjudicator
> must  consider  the  entire  case  record,
> including  the  objective  medical  evidence,
> the  individual's  own  statements  about
> symptoms,  statements  and  other  information
> provided by treating or examining physicians
> or psychologists and other persons about the
> symptoms and how they affect the individual,
> and  any  other  relevant  evidence  in  the  case
> record.   An  individual's  statements  about
> the  intensity  and  persistence  of  pain  or
> other  symptoms  or  about  the  effect  the
> symptoms have on his or her ability to work
> may  not  be  disregarded  solely  because  they
> are  not  substantiated  by  objective  medical
> evidence.
>
> 5. It is not sufficient for the adjudicator
> to  make  a  single,  conclusory  statement  that
> "the  individual's  allegations  have  been
> considered"  or  that  "the  allegations  are  (or
> are  not)  credible."   It  is  also  not  enough
> for  the  adjudicator  simply  to  recite  the
> factors  that  are  described  in  the
> regulations  for  evaluating  symptoms.   The
> determination  or  decision  must  contain
> specific  reasons  for  the  finding  on
> credibility,  supported  by  the  evidence  in
> the  case  record,  and  must  be  sufficiently
> specific  to  make  clear  to  the  individual  and
> to  any  subsequent  reviewers  the  weight  the
> adjudicator  gave  to  the  individual's
> statements and the reasons for that weight.

SSR 96-7p, 1996 SSR LEXIS 4, *3-4, 1996 WL 374186, *1-2.

credibility finding as to the claimant sufficiently implies a rejection of that testimony as well. See Osborn v. Barnhart, 194 Fed. Appx. 654, 666 (11th Cir. 2006) (per curiam) (unpublished) ("[I]f the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, . . . we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony.") (citations omitted).

In this case, the ALJ found that Plaintiff's testimony regarding the frequency of her seizure activity was "not fully credible" based on the inconsistency between her testimony and the other record evidence. [16] (Id. at 41, 43, 196). Specifically, the ALJ pointed to the lack of medical evidence to support the alleged severity of Plaintiff's seizure disorder and the fact that the treatment for Plaintiff's seizure disorder had been limited to medication only. (Id. at 41-43). In addition, the ALJ noted the inconsistency between Plaintiff's reported seizure activity and the evidence of her activities of daily living (i.e., she can feed, bathe, groom and dress herself without assistance, manage money, prepare meals, shop for

---

[16] At her hearing, Plaintiff told the ALJ that she has had seizures at a rate of three or four a month since 2002 and that there have been no periods of time when she has had fewer seizures. (Tr. 57). In her disability/seizure report produced to the Agency on July 27, 2010, Plaintiff stated that she had experienced "twelve or more" seizures in 2010. (Id. at 196).

groceries, use a phone, drive an automobile, attend church, and visit with others).  "When evaluating a claimant's credibility, an ALJ . . . may consider any inconsistencies between a claimant's alleged limitations and his daily activities." Lambeth v. Astrue, 2011 U.S. Dist. LEXIS 75150, *27, 2011 WL 2784560, *9 (S.D. Ala. July 12, 2011) (citing Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987)).  As in Lambeth, Plaintiff's varied daily activities in this case are inconsistent with her claim that her medical impairment (in this case a seizure disorder) renders her completely unable to work. Thus, the ALJ's reasons for finding Plaintiff's allegations regarding the severity of her seizure disorder to be less than fully credible are supported by the record.

Turning now to Ms. Knight's testimony, the ALJ's finding that Plaintiff's allegations regarding the severity of her seizure disorder were less than fully credible, in turn, implies that the ALJ found that Ms. Knight's cumulative evidence on this subject is likewise less than fully credible.  Indeed, Ms. Knight's testimony that Plaintiff suffers seizures approximately *two or three times a week* (id. at 69) is even inconsistent with Plaintiff's own testimony that she suffers seizures approximately *three or four times a month*.  (Id. at 57).

In sum, both Plaintiff's testimony and the testimony of her daughter on the issue of the frequency of Plaintiff's seizures

lack any support from the objective medical evidence in the record and, to the contrary, are inconsistent with the medical evidence in this case and with each other.  Thus, this testimony was properly discounted by the ALJ.  As the court observed in Osborn, "[w]hile the findings in this case could be improved upon," the ALJ properly rejected Plaintiff's subjective testimony regarding the disabling nature of her seizure disorder, and while the ALJ could have mentioned Ms. Knight's testimony, the Court concludes that the ALJ's specific credibility determination as to Plaintiff's testimony sufficiently implies a rejection of her daughter's testimony as well.  Cf. Osborn, 194 Fed. Appx. at 666.  Thus, Plaintiff's claim is without merit.

**V.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED.**

**DONE** this **31st** day of **March, 2015.**

                              /s/ SONJA F. BIVINS
                    **UNITED STATES MAGISTRATE JUDGE**